# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Abdikadar Mohamed and Fowsiya Hassan,

Plaintiffs,

v.

Tim Walz, *in his official capacity as Governor of the State of Minnesota*; State of Minnesota; Shireen Gandhi, *in her official capacity as Interim Commissioner of the Minnesota Department of Human Services, and individually*; Minnesota Department of Human Services; Jennifer Fenrow; John Doe 1-10, *individually*; and Jane Doe 1-10, *individually*,

Defendants.

Civil No. 25-2930 (DWF/EMB)

**MEMORANDUM
OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on Defendants Tim Walz, State of Minnesota (the "State"), Shireen Gandhi,[1] and the Minnesota Department of Human Services' (collectively, "State Defendants") motion to dismiss (Doc. No. 11) and Defendant Jennifer Fetrow's[2] motion to dismiss (Doc. No. 16).  Plaintiffs Abdikadar Mohamed and

---

[1]     Gandhi's first name is currently misspelled on the docket.  The Court directs the Clerk's Office to change the spelling of "Shareen" to "Shireen" on the docket.

[2]     Fetrow's last name is currently misspelled on the docket due to a spelling error in the complaint.  (*See* Doc. No. 1; Doc. No. 17 at 1 n.1.)  The Court directs the Clerk's Office to change the spelling of "Fenrow" to "Fetrow" on the docket.

Fowsiya Hassan oppose the motions.  (Doc. No. 31.)  For the reasons set forth below, the Court grants in part and denies in part the motions.

## BACKGROUND

Mohamed and Hassan are Somali Americans that owned and operated childcare centers in Hennepin County, Minnesota.  (Doc. No. 1 ("Compl.") at 4.)  Mohamed owned City Center Childcare Center ("City Center").  (*Id.*)  Hassan owned Sunshine Child Care Center ("Sunshine").  (*Id.*)  Both centers participated in Minnesota's Child Care Assistance Program ("CCAP").  (*See id.* at 7.)  CCAP is a state program operated by the Minnesota Department of Human Services ("DHS") that helps low-income families pay for childcare.  *Child Care Assistance Program Information for Child Care Providers*, Dep't of Child., Youth, & Fams., https://dcyf.mn.gov/child-care-assistance-program-information-child-care-providers (last visited Mar. 5, 2026); *see also* Minn. Stat. § 142E.02, subdiv. 1 (2025) (charging DHS Commissioner with duty to create a childcare assistance program).  Childcare providers that register with CCAP can receive payments directly from CCAP for services provided.  *Child Care Assistance Program Information for Child Care Providers*, *supra*.

At some point before August 2022, Fetrow, a Special Agent with Minnesota's Bureau of Criminal Apprehension ("BCA"), began investigating City Center and Sunshine for CCAP fraud.  (*See* Compl. at 5.)  On August 23, 2022, agents from the BCA along with employees from DHS, supervised and directed by Fetrow, executed search warrants on multiple childcare centers owned by people of East African descent, including City Center and Sunshine.  (*Id.* at 5-7.)  At the time of arrival, the agents did

2

not have the search warrants on hand, but after 30 minutes, they produced the warrants and executed those warrants. (*Id.* at 5.) Mohamed alleges that during the search, agents destroyed his security camera, forced him and his employees to stand against a wall, seized his phone to prevent him from calling his attorney, and asked questions without providing proper *Miranda* warnings. (*Id.*)

The affidavits used to obtain the search warrants for each childcare center were nearly identical. (*Id.* at 6; *see* Doc. Nos. 22, 22-1.) Each affidavit stated that hidden cameras had been placed and positioned to focus on the doorway of the childcare center. (Compl. at 6.) Agents monitored those videos to cross-check the number of children arriving with the number of children claimed for CCAP payments. (*Id.*) Each affidavit claimed that the particular center had reported more CCAP-eligible children than were seen arriving at the center. (*Id.*) The only difference between each affidavit was the number of children observed and the personal details of each center. (*See id.*; Doc. Nos. 22, 22-1.) Plaintiffs allege that the information about the hidden cameras in each search warrant was false or intentionally misleading. (Compl. at 6.) The affidavits did not allege other complaints or otherwise reveal the origin of the probe into each particular center. (*Id.* at 6-7.) Plaintiffs allege that the investigations were started because of State officials' "history of negative stereotypes and expressions of animus towards the Somali community." (*Id.*)

Following the execution of the search warrants, City Center and Sunshine were notified that their eligibility for payment through CCAP was being suspended temporarily due to DHS's determination that they had provided materially false billing information.

(*Id.* at 7.)  These suspensions were effective September 1, 2022.  (*Id.*)  Despite the suspension, DHS told Plaintiffs that they were required to continue providing services to CCAP eligible families for an additional fourteen days to allow those families time to find an alternative placement.  (*Id.* at 8.)  As part of the suspension, City Center and Sunshine were locked out of the CCAP billing system on September 1, 2022.  (*Id.* at 7.)  As a result of this lockout, City Center and Sunshine provided twenty-four days of CCAP-eligible care that they were unable to bill for through the CCAP billing system.  (*See id.* at 7-8.)

The notices stated that the centers could seek administrative review of the suspension and payment withholding.  (*Id.* at 8.)  The statute governing this review provides for only narrow administrative review.  (*See id.*)  Plaintiffs requested administrative review, but their appeals to DHS were summarily denied without explanation.  (*Id.*)

While under temporary suspension, Plaintiffs sued DHS, Jodi Harpstead (then-Commissioner of DHS), Ramsey County, and Hennepin County.  (Doc. No. 22-4 at 2; *see* Doc. No. 22-5 at 4 n.1.)  Plaintiffs challenged DHS's ability to indefinitely suspend CCAP eligibility without imposition of a sanction under the Due Process Clause.  (*See* Compl. at 9-10.)  Plaintiffs also brought a claim under the Equal Protection Clause of the Fourteenth Amendment.  (Doc. No. 22-4 at 17.)  The state district court granted the defendants' motion to dismiss on August 24, 2023, dismissing Plaintiffs' claims with prejudice.  (Doc. No. 22-5 at 2.)  Plaintiffs appealed, and the Minnesota Court of Appeals

4

affirmed.  (Compl. at 11; *see Sunshine Childcare Ctr., LLC v. Ramsey County*, 7 N.W.3d 611 (Minn. Ct. App. 2024).)

The Minnesota Court of Appeals analyzed whether Plaintiffs had a "protected property interest in the temporarily suspended CCAP payments and temporarily revoked CCAP authorization."  *Sunshine*, 7 N.W.3d at 614.  After a thorough analysis of the CCAP statute, it concluded that "the CCAP statute does not create a protected property interest upon which appellants can rely to sustain their procedural-due-process claims because DHS has acted in accordance with the statute."  *Id.* at 617.  Notably, the Court of Appeals limited its decision to those particular circumstances.  *See id.* at 618 n.6 ("We take no position on whether a childcare provider possesses a constitutionally protected property interest in CCAP payments and authorization under different circumstances.").

Plaintiffs petitioned the Minnesota Supreme Court for review and it accepted.  (Compl. at 11-12.)  Shortly after review was granted, the BCA closed its investigation into the centers without a finding of wrongdoing.  (*Id.*)  Accordingly, DHS asked the Minnesota Supreme Court to dismiss the appeal as moot.  (*Id.*)  The Minnesota Supreme Court granted DHS's request, explaining that because the sanctions challenged were lifted, there was no relief left to grant.  (Doc. No. 22-6 at 4.)  It continued, "the holds are withdrawn, payments due will be processed, and should the Centers wish to become relicensed, they may apply for authorization like any other applicant."  (*Id.*)  On January 13, 2025, following the dismissal, Minnesota's Clerk of the Appellate Court entered a judgment containing the following language:  "Pursuant to a decision of the Minnesota Court of Appeals duly made and entered, it is determined and adjudged that

5

the decision of the Hennepin County District Court, Civil Division herein appealed from be and the same hereby is affirmed and judgment is entered accordingly."  Judgment at 1, *Sunshine Childcare Ctr., LLC v. Ramsey County*, No. 27-CV-23-3010 (Minn. Dist. Ct. Jan. 13, 2025.)

Following the dismissal and entry of judgment, DHS refused to pay the centers for the 24 days of childcare provided in August and September of 2022 because of a statute that requires claims for payment to be submitted within one year of the provision of services.  (Compl. at 12-13.)  Consequently, Plaintiffs filed this case to challenge Defendants' actions throughout the investigation and temporary suspension, but also their refusal to pay Plaintiffs for services already provided.

Plaintiffs bring eight claims against Walz, the State, Gandhi, DHS, Fetrow, and 20 unnamed John and Jane Does who are described as unknown agents of the BCA and DHS (the "Doe Defendants").  (*See id.* at 4.)  Plaintiffs sue Walz and Gandhi in their official capacities.[3]  (*Id.*)  Fetrow and the Doe Defendants are sued in their individual capacities. (*Id.*)  Count 1 alleges selective discriminatory enforcement against all Defendants.  (*Id.* at 13-14.)  Counts 2 and 3 allege facial and as-applied procedural due process claims against the State Defendants.  (*Id.* at 14-17.)  Count 4 alleges Fourth Amendment

---

[3]    The complaint caption appeared to list that Gandhi was being sued in her individual capacity as well.  (Compl. at 1.)  The complaint later clarifies that she is only sued in her official capacity.  (*Id.* at 4.)  Plaintiffs have also confirmed that Gandhi is only sued in her individual capacity.  (*See* Doc. No. 13 at 3 n.7.)  The Court directs the Clerk's Office to change the party text for Gandhi to "*in her official capacity as Interim Commissioner of the Minnesota Department of Human Services.*"

violations by Fetrow and the Doe Defendants. (*Id.* at 17-18.) Count 5 alleges Fifth Amendment violations by Fetrow and the Doe Defendants. (*Id.* at 18.) Count 6 alleges involuntary servitude against all Defendants. (*Id.* at 19-20.) Count 7 alleges unjust enrichment against all Defendants. (*Id.* at 20.) Count 8 alleges defamation per se and defamation against all Defendants. (*Id.* at 21-22.) The State Defendants and Fetrow moved to dismiss the complaint. (Doc. Nos. 11, 16.)

## DISCUSSION

### I.   Legal Standards

#### A.   Rule 12(b)(1)

A party may challenge a court's subject matter jurisdiction under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction has the burden of proving jurisdiction by a preponderance of the evidence. *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). A Rule 12(b)(1) motion may challenge a plaintiff's complaint either facially or factually. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). On a factual attack, a court may consider matters outside the pleadings to determine whether it has subject matter jurisdiction. *Id.* Here, as confirmed at oral argument, the State Defendants assert a facial attack on the Court's subject matter jurisdiction.

#### B.   Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.

7

1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may also consider certain matters outside of the pleadings, including matters of public record or materials embraced by the complaint.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Plaintiffs' Concession to Dismiss Certain Counts

Plaintiffs agree in their opposition briefing that certain counts must be dismissed due to Eleventh Amendment immunity or other pleading failures.  (*See, e.g.*, Doc. No. 31 at 3.)  The Court clarified Plaintiffs' concessions at oral argument.  In line with Plaintiffs' assertions at oral argument, the Court dismisses Counts 5 and 6 as to all Defendants, Count 7 as to the State Defendants and Fetrow, and Count 8 as to the State Defendants. The parties did not fully address whether this dismissal should be with or without

8

prejudice.  The Court finds dismissal without prejudice is appropriate here because the concessions were based on Eleventh Amendment immunity or pleading failures that are not persistent at this stage of the proceedings.

In sum, Counts 5 and 6 are dismissed in their entirety without prejudice, Count 7 remains only as to the Doe Defendants, and Count 8 remains only as to Fetrow and the Doe Defendants.

## III.    State Defendants' Motion to Dismiss

The Court first addresses the State Defendants' subject matter jurisdiction challenge under the doctrine of sovereign immunity and the *Rooker-Feldman* doctrine. *See Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 609 (8th Cir. 2018) ("[W]e have an independent obligation to determine whether subject-matter jurisdiction exists before proceeding to the merits, even when no party raises the issue."); *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999) (explaining that sovereign immunity "is a jurisdictional threshold matter").  Then, the Court addresses claim preclusion and the State Defendants' other arguments under Rule 12(b)(6).

### A.    Sovereign Immunity

A state or its agencies may not be sued in federal court unless the state has waived its sovereign immunity or Congress has abrogated the state's sovereign immunity.  U.S. Const. amend. XI; *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Sovereign immunity also extends to state officials sued in their official capacity except where the exception described in *Ex parte Young*, 209 U.S. 123 (1908), applies.  *See EEE Mins.,*

9

*LLC v. North Dakota*, 81 F.4th 809, 815 (8th Cir. 2023) (citing *Pennhurst*, 465 U.S. at 101). Under *Ex parte Young*, sovereign immunity does not apply to state officials when "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation modified). Thus, requests for damages and retrospective declaratory or injunctive relief are barred by sovereign immunity. *See Green v. Mansour*, 474 U.S. 64, 68, 74 (1985).

Only Counts 1, 2, and 3 remain as to the State Defendants. Count 1 seeks $13 million in damages. (Compl. at 14.) Count 2 seeks declaratory relief, injunctive relief, and nominal damages. (*Id.* at 15.) Count 3 seeks declaratory relief, injunctive relief, and $13 million in damages. (*Id.* at 16-17.) Plaintiffs have not shown that the State waived its sovereign immunity or that Congress abrogated its sovereign immunity. Accordingly, the State and DHS are dismissed in their entirety without prejudice and shall be terminated as parties to this case. Additionally, Walz and Gandhi are immune from any claim for damages, so Count 1 must be dismissed in its entirety as to the State Defendants and Counts 2 and 3 are dismissed insofar as they seek damages.

Walz and Gandhi argue that Plaintiffs' requests for declaratory relief in Count 2 and for injunctive and declaratory relief in Count 3 must also be dismissed because they seek retrospective relief. (*See* Doc. No. 33 at 1-2.) In contrast, Walz and Gandhi do not challenge Plaintiffs' request for injunctive relief on Count 2. (*See id.* at 2.) Count 2 specifically requests "a judgment declaring Minnesota's denial of judicial appeals of indefinite suspensions of CCAP payments to be unconstitutional." (Compl. at 15.)

Count 3 specifically requests "a judgment declaring that the notices of 'temporary' suspension of their CCAP eligibility were unconstitutional" and "a permanent injunction barring Minnesota from issuing such notices to them in the future." (*Id.* at 16-17.) The Court agrees that the declaratory relief in Count 3 is retrospective, but the declaratory relief sought in Count 2 and the injunctive relief sought in Count 3 is prospective. The declaratory relief in Count 2 asks for a declaratory judgment regarding future application of the CCAP suspension statute. The injunctive relief in Count 3 asks for an injunction preventing future notices from being issued to them.

In sum, the Court lacks subject matter jurisdiction over the State and DHS and over Count 1 as to all State Defendants. Counts 2 and 3 remain on limited relief theories.

## B. *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, lower federal courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is confined to situations "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam). Not all claims that challenge a legal conclusion in a state court judgment qualify under this doctrine. *Exxon Mobil*, 544 U.S. at 293. The claim must also seek relief from the state court's judgment. *Hageman v. Barton*, 817 F.3d 611, 615 (8th Cir. 2016).

To determine whether a claim qualifies, a court should look to the nature of the claim or alleged injury and the kind of relief the plaintiff seeks. *See id.* at 614 ("The boundaries for application of the doctrine depend upon the nature of the federal claims and whether the plaintiff in federal court, in fact, seeks relief from the state court judgment."). For example, in *Kvalvog v. Park Christian School, Inc.*, the lower court had jurisdiction because the plaintiffs' claims did not seek relief from a state court judgment but instead "request[ed] relief for the Defendants' allegedly illegal acts and omissions during the proceedings." 66 F.4th 1147, 1152 (8th Cir. 2023). In contrast, in *Skit International, Ltd. v. DAC Technologies of Arkansas, Inc.*, the lower court did not have jurisdiction because the plaintiff's alleged injury stemmed directly from the state court judgment, not from some separate conduct, as the plaintiff sought to have the state court's judgment declared null and void for lack of service of process and lack of jurisdiction. 487 F.3d 1154, 1156-57 (8th Cir. 2007).

The State Defendants argue summarily that all of Plaintiffs' claims are barred under this doctrine because the state court already decided the issues of equal protection and due process and could have decided the other claims. (Doc. No. 13 at 16.) They provide no further explanation of how the doctrine applies. The Court has conducted its own review of the injuries alleged and remedies sought. While the claims embrace conclusions made by the state court, the case is not styled as an appeal, and Plaintiffs do not seek direct relief from the state court judgment. Therefore, the Court has jurisdiction over Plaintiffs' remaining claims. Claim preclusion, a similar but distinct doctrine, applies to many of these claims, however, so the Court addresses that next.

12

### C. Claim Preclusion

"Claim preclusion, or res judicata, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Plough ex rel. Plough v. W. Des Moines Cmty. Sch. Dist.*, 70 F.3d 512, 515 (8th Cir. 1995) (citation modified). Claim preclusion applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)). "Whether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989) (citation modified).

The State Defendants argue that the claims against them must be dismissed because the state court's judgment precludes re-litigation of these issues. Only Counts 2 and 3 remain as to the Walz and Gandhi, so the Court only considers claim preclusion on those counts. The parties agree that the second and third elements of claim preclusion are met but disagree about elements one and four. (*See* Doc. No. 31 at 7; Doc. No. 33 at 2.)

First, Plaintiffs contend that there is no final judgment on the merits because the Minnesota Supreme Court dismissed the discretionary appeal as moot. (Doc. No. 31 at 7.) Because a Minnesota court rendered the first judgment, the Court relies on Minnesota law to determine whether there was a final judgment on the merits. *C.H.*

*Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012).  Under

Minnesota Rules of Civil Procedure, a court's order for dismissal, other than a dismissal

for lack of jurisdiction, forum non conveniens, or failure to join an indispensable party, is

an adjudication on the merits.  Minn. R. Civ. P. 41.02(c); *see State v. Joseph*, 636 N.W.2d

322, 328 (Minn. 2001).  Thus, unless the dismissal falls under one of the named

exceptions, or the issuing judge says otherwise, a state district court's dismissal order is a

final judgment on the merits.  That judgment is final upon entry and remains final unless

it is reversed, vacated, or otherwise modified by an appellate court.  *Brown-Wilbert,*

*Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 221 (Minn. 2007).

While the Court agrees that the Minnesota Supreme Court's dismissal was a

jurisdiction-related dismissal, that dismissal had no impact on the district court judgment

or the Court of Appeals judgment below.  The dismissal only dismissed the discretionary

appeal and contained no further instructions to reverse, vacate, or otherwise modify the

trial court or intermediate appellate court judgments.  Furthermore, the Clerk of the

Appellate Courts issued a judgment affirming the state district court's order following the

Minnesota Supreme Court's dismissal.  The trial court's judgment was never reversed,

vacated, or otherwise modified, so it remains a final judgment for res judicata purposes.

Second, Plaintiffs argue that these claims rely on an "entirely different set of

facts." (Doc. No. 31 at 9.)  In the state court litigation, Plaintiffs challenged Defendant's

temporary suspension of their CCAP payments under the Due Process Clause of the

Fourteenth Amendment, among other laws.  (*See* Doc. No. 22-4 at 17-21.)  Plaintiffs

sought damages, an injunction, and declaratory judgment.  (*Id.* at 21-22.)  Here, Plaintiffs

14

again challenge the suspension of CCAP payments, again under the Due Process Clause of the Fourteenth Amendment.

The State Defendants are primarily correct that this case involves the same nucleus of operative facts. However, additional events occurred after that lawsuit, namely, the State's refusal to reimburse Plaintiffs for twenty-four days of CCAP-eligible services that were already provided *after* the investigation was closed and suspension was lifted. Those events are distinct from the theories presented to the state court, and they could not have been presented to the state court because they occurred after the Minnesota Supreme Court dismissed the discretionary appeal. That is outside the nucleus of operative facts considered in state court. *See Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir. 2000) ("It is well settled that claim preclusion does not apply to claims that did not arise until *after* the first suit was filed.") Therefore, Counts 2 and 3 remain solely based on Walz and Gandhi's refusal to pay for twenty-four days of CCAP-eligible services that Plaintiffs already provided, after the temporary suspension ended. The other theories are dismissed.

### D.    Failure to State A Claim

Only Counts 2 and 3 remain against Walz and Gandhi on the narrow theory that, after the temporary suspension ended, they have refused to pay Plaintiffs for the 24 days of services provided while the suspension was in place and they were locked out of the CCAP billing system. Defendants argue that Plaintiffs have failed to state a procedural due process claim on this set of facts because they have not alleged a protected property interest. (Doc. No. 13 at 19-22.) Plaintiffs argue that they have a protected property

15

interest in CCAP payments for eligible services provided now that the investigation has ended and the suspension has been lifted.  (*See* Doc. No. 31 at 19.)  Defendants failed to address this argument in the briefing, and seem to concede that this could be a protected property interest.  (*See* Doc. No. 33 at 11 ("At best, Plaintiffs' due process claims apply only to the services Plaintiffs were allegedly directed to provide shortly before and after the CCAP suspension.").)  Given the lack of briefing on this issue, the Court concludes that this theory is adequate, at least at this venture.  The State Defendants' motion is denied as to Counts 2 and 3 against Walz and Gandhi on this narrow theory.

## IV.   Fetrow's Motion to Dismiss

Following Plaintiffs' concessions, only Counts 1, 4, and 8 remain against Fetrow. The Court addresses each count in turn.

### A.   Count 1:  Selective Discrimination Enforcement

Count 1 alleges that Fetrow selectively chose to investigate Plaintiffs' childcare centers, and other childcare centers, and enforce the law against them because they were owned and operated by persons of East African descent.  (*See* Compl. at 6-7, 13-14.)  The Equal Protection Clause of the Fourteenth Amendment prohibits selective enforcement of the law based on considerations such as race, ethnicity, or religion.  *See Whren v. United States*, 517 U.S. 806, 813 (1996); *Wayte v. United States*, 470 U.S. 598, 608 (1985); *Gilani v. Matthews*, 843 F.3d 342, 347 (8th Cir. 2016).  To make a selective enforcement claim, the plaintiff must show that the enforcement had discriminatory effect and was motivated by a discriminatory purpose.  *Wayte*, 470 U.S. at 608; *see, e.g., Jiang v. Porter*, 156 F. Supp. 3d 996, 1004-05 (E.D. Mo. 2015) (finding plaintiff made sufficient

16

allegations to support a selective enforcement claim). To show discriminatory effect, the plaintiff must show that people of another race, ethnicity, or religion violated the law and the law was not enforced against them. *See Gilani*, 843 F.3d at 348. To show discriminatory purpose, a plaintiff must show the official's decision to enforce the law was at least partially based on race, ethnicity, or religion. *See United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996).

Fetrow argues that Plaintiffs fail to state a claim because they did not plead a discriminatory effect or discriminatory purpose and that she is entitled to qualified immunity. (Doc. No. 17 at 22-27.) The Court agrees that Plaintiffs do not adequately allege a selective enforcement claim. Plaintiffs do not allege that similarly situated people of another race, ethnicity, or religion violated the law and that the law was not enforced against them.

Plaintiffs counter that their pleading was sufficient because they pleaded that *only* Somalis were targeted by Fetrow and that their case is akin to *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). (Doc. No. 31 at 15-16.) In *Yick Wo*, all two hundred laundry businesses owned by Chinese people that applied for a permit were denied while nearly all laundry businesses owned by people who were not Chinese were approved for a permit. 118 U.S. at 373-74. *Yick Wo* is an example of the rare case where a stark pattern of discrimination is sufficient to make an equal protection claim. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). "Absent a pattern as stark as that in . . . *Yick Wo*, impact alone is not determinative, and the Court must look to other evidence." *Id.* (footnote omitted). Plaintiffs' complaint does not allege such a stark pattern of

17

enforcement by Fetrow or the State generally.  Plaintiffs only include information about a small subsect of enforcement actions on one day.  The Court requires more.  Accordingly, the Court dismisses Count 1 as to Fetrow without prejudice.[4]

### B.     Count 4:  Fourth Amendment Violation

Count 4 alleges that Fetrow violated the Fourth Amendment by including false or misleading statements in the search warrant affidavits.  (Compl. at 17-18.)  To state a claim under § 1983 for false statements in a search warrant, the plaintiff must allege that: (1) a false statement was knowingly and intentionally, or with reckless disregard to the truth, included in the affidavit, and (2) "the affidavit's remaining content is insufficient to provide probable cause."  *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014).

Fetrow argues that Plaintiffs' allegations are insufficient to challenge the search warrants.  (Doc. No. 17 at 11-16.)  To make this argument, Fetrow relies primarily on the summary judgment standard and information from outside of the complaint.  (*See id.*)  At the motion to dismiss stage, a plaintiff need only plausibly allege their claims.  No evidence is required.  Plaintiffs' complaint plausibly alleges that Fetrow included false or misleading statements in the search warrant affidavits.  (*See, e.g.*, Compl. at 6.)  Those allegations may be disproved during discovery, but Fetrow's assertion that there is no

---

[4]     Although it is not necessary today,  the Court notes that it would have denied qualified immunity on this count as it does below on Count 4.  It is clearly established that selective enforcement of the law based on race, ethnicity, or religion violates a person's equal protection rights.  *Whren*, 517 U.S. at 813; *Wayte*, 470 U.S. at 608; *Gilani*, 843 F.3d at 347.

evidence and that the allegations will be disproved is irrelevant to the Court's inquiry under Rule 12(b)(6).

Fetrow also asserts that she is entitled to qualified immunity on Count 4 "because it was not clearly established that her conduct violated the constitution." (Doc. No. 17 at 27.) The doctrine of qualified immunity protects state actors from civil liability for their discretionary acts when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). To overcome qualified immunity, a plaintiff must show that: (1) the officer "violated a federal statutory or constitutional right"; and (2) the right was clearly established at the time of the violation. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018). The Court has discretion to decide which prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established when there is "a sufficiently clear foundation in then-existing precedent." *Wesby*, 583 U.S. at 63. A clear foundation means that the law must be sufficiently clear such that every reasonable officer would understand that their conduct violates that right. *See id.* To make such a showing, a plaintiff may identify "existing circuit precedent that squarely governs the official's conduct, a robust consensus of persuasive authority on the issue, or a general constitutional rule that applies with obvious clarity to the facts at issue." *Webster v. Saint Louis County*, 135 F.4th 614,

19

617 (8th Cir. 2025). Courts must define clearly established law with a high level of specificity, not generally. *Wesby*, 583 U.S. at 63-64.

The Eighth Circuit held in *Williams* that "the Fourth Amendment right of citizens not to be arrested without probable cause is indeed clearly established. Furthermore, it is clearly established that the Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause in a sworn affidavit." 772 F.3d at 1313 (citation modified). Every reasonable official would understand that including false information in a search warrant affidavit would violate clearly established constitutional rights. Fetrow is not entitled to qualified immunity.

Lastly, the Court does not read Count 4 to claim that the search was conducted without a warrant, that the warrant was unreasonably executed, or that Mohamed and his employees were unlawfully seized. Instead, those allegations appear to be tied to Count 5. (*See* Compl. at 18.) Regardless, to the extent those theories for relief are brought under Count 4, they are dismissed. The complaint does not allege that a search took place without a search warrant. At most, it alleges that a couple of BCA or DHS agents stayed at Plaintiffs' properties while Fetrow obtained physical copies of the warrants. (*See* Compl. at 5.) This is insufficient to allege a warrantless search. Additionally, the allegations regarding the execution of the search warrant do not rise to the level of unreasonableness required by the law or constitute an unlawful seizure. *See Mountain Pure, LLC v. Roberts*, 814 F.3d 928, 934 (8th Cir. 2016) (explaining that occupants or employees of a business may be detained while police officers execute a search warrant on the business); *Cook v. Gibbons*, 308 F. App'x 24, 28-31 (8th Cir. 2009)

20

(discussing when property damage constitutes unreasonable execution of a search warrant).

### C.   Count 8:  Defamation Per Se and Defamation

Count 8 alleges that Defendants' issuance of CCAP suspension notices constitute defamation per se and defamation.  (Compl. at 21-22.)  Fetrow argues that this claim is barred by the statute of limitations and that Plaintiffs fail to allege any facts indicating Fetrow was involved in issuing the notices.  (Doc. No. 17 at 29.)  Plaintiffs do not address Fetrow's arguments on Count 8.  (*See* Doc. No. 31.)

Defamation and defamation per se are subject to a two-year statute of limitations under Minnesota law.  Minn. Stat. § 541.07(1) (2025); *see Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*, 437 F. Supp. 3d 693, 706 (D. Minn. 2020).  That period begins to run on publication of the challenged statement.  *McGovern v. Cargill, Inc.*, 463 N.W.2d 556, 558 (Minn. Ct. App. 1990).  Here, the notices were published in August or September of 2022.  Plaintiffs filed their complaint on July 21, 2025, nearly three years later.  Therefore, Count 8 is barred and the Court dismisses it with prejudice.  *See Johnson v. Mott*, 376 F. App'x 641, 641-42 (8th Cir. 2010) (affirming dismissal with prejudice because action was barred by the statute of limitations).

### V.   Doe Defendants

Counts 1, 4, 7, and 8 remain against the Doe Defendants.  Neither the State Defendants nor Fetrow advanced arguments on behalf of the Doe Defendants.  Count 1 is dismissed as to the Doe Defendants as well because the same pleading failures described above pertain to them.  Count 4 is dismissed as to the Doe Defendants because that count

21

only covers Fetrow's inclusion of false statements in the search warrant affidavit. All other theories were dismissed. Count 8 is dismissed as to the Doe Defendants as well because the statute of limitations completely bars that claim. Count 7 remains as to the Doe Defendants.

## VI.   Request for Leave to Amend

Plaintiffs included various requests for leave to amend within their briefing on the motions to dismiss. (*See* Doc. No. 31 at 29.) Plaintiffs did not make a formal motion to amend the complaint. Plaintiffs missed the window to amend as a matter of course under Rule 15(a)(1), so they must instead request leave of court to amend. *See* Fed. R. Civ. P. 15(a)(2). Typically, such a request is made through a formal motion to amend in this District. *See* D. Minn. L.R. 15.1. Given typical practice and the minimal briefing on the proposed amendments, the Court denies the informal request. Plaintiffs may file a formal motion to amend that complies with the requirements of Local Rule 15.1(b). That motion should be filed within the next thirty days.

## CONCLUSION

The Court dismisses most of Plaintiffs' claims today but remains troubled by Defendants' alleged conduct. Defendants blocked Plaintiffs' ability to submit claims for CCAP services, then after the time to submit those claims passed, dropped the investigation and represented to the Minnesota Supreme Court that Plaintiffs would receive payment. Following the dismissal, Defendants refused to reimburse Plaintiffs because they did not submit the payments within one year, a problem allegedly caused only by the State's decision to block Plaintiffs' access to the billing system. Defendants

now claim their hands are tied.  The Court believes it would be in everyone's best interest for the parties to sit down and work this matter out without further litigation.

The remaining claims are as follows:  Counts 2 and 3 remain only against Walz and Gandhi on the limited theory that the State's refusal to pay after the temporary suspension was lifted and the Minnesota Supreme Court dismissed the state case constitutes a violation of the Due Process Clause.  The requests for declaratory and injunctive relief remain on Count 2.  The request for injunctive relief remains on Count 3.  Count 4 remains on the challenge to the search warrants affidavits, not how the warrants were executed.  Count 7 remains solely as to the Doe Defendants.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1.      Defendants Tim Walz, State of Minnesota, Shireen Gandhi, and Minnesota Department of Human Services' motion to dismiss (Doc. No. [11]) is **GRANTED IN PART** and **DENIED IN PART**.

2.      Defendant Jennifer Fetrow's motion to dismiss (Doc. No. [16]) is **GRANTED IN PART** and **DENIED IN PART**.

3.      Count 8 is **DISMISSED WITH PREJUDICE** as to Defendant Fetrow and the Doe Defendants.  Count 8 is **DISMISSED WITHOUT PREJUDICE** as to Defendants Walz, the State of Minnesota, Gandhi, and the Minnesota Department of Human Services.

23

4.      Counts 1, 5, and 6 are **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

5.      The State of Minnesota and the Minnesota Department of Human Services are **TERMINATED** as parties in this case.

6.      Plaintiffs may seek leave to amend by filing a motion to amend, as outlined in Local Rule 15.1(b), within the next thirty (30) days.  If no such motion is filed, the case will proceed on the surviving claims.

7.      The Clerk of Court is directed to change the spelling of Defendant Shireen Gandhi's name from "Shareen" to "Shireen" on the docket.

8.      The Clerk of Court is directed to change the spelling of Defendant Jennifer Fetrow's last name from "Fenrow" to "Fetrow" on the docket.

9.      The Clerk of Court is directed to change the party text for Defendant Gandhi to "*in her official capacity as Interim Commissioner of the Minnesota Department of Human Services.*"

Dated:  March 6, 2026                     s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge