**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Abdikadar Mohamed and Fowsiya Hassan,

Plaintiffs,

v.

Tim Walz, *in his official capacity as Governor of the State of Minnesota and individually*; State of Minnesota; John Connolly, *in his official capacity as Temporary Commissioner of the Minnesota Department of Human Services*[1]; Shireen Gandhi, *individually*; Tikki Brown, *in her official capacity as Commissioner of the Minnesota Department of Children, Youth, and Families and individually*; Minnesota Department of Human Services; Jennifer Fetrow; Twila Villella; John Doe 1-10, *individually*; Jane Doe 1-10, *individually*; and Minnesota Department of Children, Youth, and Families,

Defendants.

Civil No. 25-2930 (DWF/EMB)

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on Defendants Tim Walz, State of Minnesota (the "State"), John Connolly, Shireen Gandhi, Tikki Brown, the Minnesota Department of Human Services, the Minnesota Department of Children, Youth, and Families

[1] John Connolly is automatically substituted in as Temporary Commissioner of the Minnesota Department of Human Services. Fed. R. Civ. P. 25(d).

(collectively, "State Defendants"), and Twila Villella's motion to dismiss the second amended complaint. (Doc. No. 60.) Plaintiffs Abdikadar Mohamed and Fowsiya Hassan oppose the motion. (Doc. No. 70.) For the reasons set forth below, the Court grants in part and denies in part the motion.

**BACKGROUND**

Mohamed and Hassan are Somali Americans that owned and operated childcare centers in Hennepin County, Minnesota. (Doc. No. 55 ("SAC") at 4.) Mohamed owned City Center Childcare Center ("City Center"). (*Id.*) Hassan owned Sunshine Child Care Center ("Sunshine"), and prior to owning Sunshine, she owned Sunlight Child Care Center ("Sunlight"). (*Id.*) Both centers participated in Minnesota's Child Care Assistance Program ("CCAP"). (*Id.* at 6.) CCAP is a state program operated by the Minnesota Department of Children, Youth, and Families ("DCYF") that helps low-income families pay for childcare. (*Id.* at 4; *Child Care Assistance Program Information for Child Care Providers*, Dep't of Child., Youth, & Fams., https://dcyf.mn.gov/child-care-assistance-program-information-child-care-providers (last visited Aug. 27, 2026).) The Minnesota Department of Human Services ("DHS") ran the program until those functions were given to DCYF at the beginning of 2024. (SAC at 4.) Childcare providers that register with CCAP can receive payments directly from CCAP for services provided. (*See id.* at 6.)

At some point before August 2022, Fetrow, a Special Agent with Minnesota's Bureau of Criminal Apprehension ("BCA"), began investigating City Center and Sunshine for CCAP fraud. (*See id.*) On August 23, 2022, agents from the BCA along

with employees from DHS, supervised and directed by Fetrow, executed search warrants on multiple childcare centers owned by people of East African descent, including City Center and Sunshine. (*Id.* at 6-8.) The affidavits used to obtain the search warrants for each childcare center were nearly identical. (*Id.* at 7.) Each affidavit stated that hidden cameras had been placed and positioned to focus on the doorway of the childcare center. (*Id.*) Agents monitored those videos to cross-check the number of children arriving with the number of children claimed for CCAP payments. (*Id.*) Each affidavit claimed that the particular center had reported more CCAP-eligible children than were seen arriving at the center. (*Id.*) The only difference between each affidavit was the number of children observed and the personal details of each center. (*See id.*) Plaintiffs allege that the information about the hidden cameras in each search warrant was false or intentionally misleading and that the information was supplied by Fetrow or Villella, a DHS investigator. (*Id.* at 5, 7, 16.) The affidavits did not allege other complaints or otherwise reveal the origin of the probe into each particular center. (*Id.* at 8.) Plaintiffs allege that the investigations were opened because of State officials' "belief that businesses owned by members of the Somali community were automatically suspect." (*Id.*)

Following the execution of the search warrants, City Center and Sunshine were notified that their eligibility for payment through CCAP was being suspended temporarily due to DHS's determination that they had provided materially false billing information. (*Id.* at 12.) These suspensions were effective September 1, 2022. (*Id.*) Despite the suspension, DHS told Plaintiffs that they were required to continue providing services to CCAP eligible families for an additional fourteen days to allow those families time to

find an alternative placement. (*Id.*) City Center and Sunshine provided those fourteen days and ten additional days beyond that because some of the affected families struggled to find an alternative placement. (*Id.*) As part of the suspension, City Center and Sunshine were locked out of the CCAP billing system on September 1, 2022. (*Id.*) As a result of this lockout, City Center and Sunshine were unable to bill for those twenty-four days of provided services through the CCAP billing system. (*Id.*)

While under temporary suspension, Plaintiffs sued DHS, Jodi Harpstead, the DHS Commissioner at the time, Ramsey County, and Hennepin County. (*Id.* at 13; Doc. No. 22-4 at 2; *see* Doc. No. 22-5 at 4 n.1.) Plaintiffs challenged DHS's ability to indefinitely suspend CCAP eligibility without imposition of a sanction under the Due Process Clause. (SAC at 13.) The state district court granted the defendants' motion to dismiss on August 24, 2023, dismissing Plaintiffs' claims with prejudice. (Doc. No. 22-5 at 2.) Plaintiffs appealed, and the Minnesota Court of Appeals affirmed. (SAC at 14; *see Sunshine Childcare Ctr., LLC v. Ramsey County*, 7 N.W.3d 611 (Minn. Ct. App. 2024).)

Plaintiffs petitioned the Minnesota Supreme Court for review and it accepted. (SAC at 15.) Shortly after review was granted, the BCA closed its investigation into the centers without a finding of wrongdoing. (*Id.*) Accordingly, DHS asked the Minnesota Supreme Court to dismiss the appeal as moot. (*Id.*) The Minnesota Supreme Court granted DHS's request, explaining that because the sanctions challenged were lifted, there was no relief left to grant. (Doc. No. 22-6 at 4.) It continued, "the holds are withdrawn, payments due will be processed, and should the Centers wish to become relicensed, they may apply for authorization like any other applicant." (*Id.*)

Following the dismissal and entry of judgment, DHS refused to pay the centers for the twenty-four days of childcare it provided after the temporary suspension notice because of a statute that requires claims for payment to be submitted within one year of the provision of services. (SAC at 16.) Consequently, Plaintiffs filed this case to challenge Defendants' actions throughout the investigation and temporary suspension, but also their refusal to pay Plaintiffs for services already provided. After filing this action, Hassan received notices from DCYF stating that it had determined that it had overpaid her in the past and disqualifying her from CCAP payments for her previous childcare center, Sunlight. (*Id.* at 22.) The notices were based on six-year-old allegations. (*Id.*)

Plaintiffs brought eight claims in their original complaint. (Doc. No. 1.) State Defendants and Fetrow moved to dismiss the original complaint in September of 2025. (Doc. Nos. 11, 16.) On March 6, 2026, the Court granted in part and denied in part those motions. (Doc. No. 35.) After that order, Plaintiffs' due process claims remained on a limited theory that the State's refusal to pay Plaintiffs after temporary suspension was lifted and the Minnesota Supreme Court dismissed the state case constituted a violation of the Due Process Clause. Plaintiffs' Fourth Amendment claim remained solely against Fetrow on a theory that she included false information in the search warrant affidavits. And Plaintiffs' unjust enrichment claim remained as to John Doe 1-10 and Jane Doe 1-10 (the "Doe Defendants") only.

During the pendency of the first motions to dismiss, Plaintiffs asked for permission to amend their complaint. (*See id.* at 22.) The Court denied that informal request and directed them to file a formal motion for leave to amend, as outlined in Local

Rule 15.1(b). (*Id.* at 22, 24.) Plaintiffs did so, and Defendants did not oppose Plaintiffs' second motion to amend. (Doc. Nos. 39, 44, 52.) Accordingly, Magistrate Judge Elsa M. Bullard granted the motion and Plaintiffs filed their second amended complaint. (Doc. No. 54.)

In the second amended complaint, Plaintiffs bring four claims: (1) selective discriminatory enforcement against Gandhi and Brown in their individual capacities; (2) denial of procedural due process (as applied) for declaratory and injunctive relief against Walz, Connolly, and Brown in their official capacities, and for damages against Walz, Gandhi, Brown, and the Doe Defendants in their individual capacities; (3) Fourth Amendment violation against Fetrow, Villella, and the Doe Defendants in their individual capacities; and (4) Plaintiff Hassan brings a claim of due process retaliation against Walz, Gandhi, Brown, and the Doe Defendants in their individual capacities. (SAC at 17-23; Doc. No. 62 at 7 n.7.) Counts 1 through 3 are substantially similar to claims Plaintiffs brought in their original complaint, while Count 4 is an entirely new claim. State Defendants and Villella move to dismiss the second amended complaint in its entirety, reraising many arguments from their first motion to dismiss. (Doc. Nos. 13, 60, 62.)

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may also consider certain matters outside of the pleadings, including matters of public record or materials embraced by the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Personal Involvement

State Defendants and Villella argue that all four claims should be dismissed as to their individual capacities because Plaintiffs fail to allege sufficient personal involvement in the underlying constitutional violations. "Suits against officials in their individual capacity 'seek to impose personal liability upon a government official for actions he takes under color of state law.'" *Clay v. Conlee*, 815 F.2d 1164, 1169 (8th Cir. 1987) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The doctrine of *respondeat superior* does not apply to § 1983 actions. Instead, a supervisor can be held individually liable for

a subordinate's constitutional violation only if a plaintiff shows that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see. *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994). Additionally, negligence in failing to detect and prevent unconstitutional conduct by subordinates is insufficient to establish personal liability for a supervisory official under § 1983. *Id.*

On Count 1, the Court agrees that Plaintiffs fail to make a showing of personal involvement by Gandhi or Brown. The investigations into City Center and Sunshine started sometime prior to August 2022 when BCA and DHS agents executed search warrants on the centers. As Plaintiffs concede, DCYF did not exist until July 2024 and Gandhi did not become Temporary Commissioner of DHS until February 2025. (SAC at 5; Doc. No. 62 at 9; Doc. No. 70 at 2 & n.2.) Therefore, Brown and Gandhi were not involved in the decision to investigate Plaintiffs' centers whatsoever. Plaintiffs allege that Brown and Gandhi approved of the actions and have exhibited the same animus since taking their positions, but, even if true, that is irrelevant to the constitutional violation alleged in Count 1.

Plaintiffs further concede, via footnote, that a "nonsubstantive" amendment may be necessary to add Harpstead in her individual capacity so that they can maintain this claim. (Doc. No. 70 at 2 n.2.) This concession undermines Plaintiffs' personal involvement argument. If it is so simple to swap Gandhi and Brown's names for Harpstead's name, then none of the allegations can be truly *personal* to Gandhi or

Brown.[2] Merely acting as a supervisor to officials who violate the Constitution is not enough to make that supervisor liable under § 1983. Accordingly, the Court dismisses Count 1 without prejudice.

The same is true for Counts 2 and 4. The allegations specifically relating to each count do not address Walz, Gandhi, or Brown's individual actions whatsoever, and earlier allegations do not clarify their role in the alleged due process violation or retaliation. On Count 2 there is only one allegation that mentions Walz, Gandhi, or Brown:

> Plaintiffs are also entitled to an award of compensatory damages payable by WALZ, [GANDHI], and BROWN because those Defendants, acting with deliberate indifference after being placed on notice by Plaintiffs' request for payment made to the Minnesota Supreme Court where WALZ, GANDHI, and BROWN had appeared through counsel provided by the Minnesota Attorney General's Office, frustrated Plaintiffs' constitutional due-process rights by permitting DHS/DCYF to refuse payment for Plaintiffs' provision of 24-days of services even after DHS had told the Minnesota Supreme Court that DHS would make payment for such services and thereby obtained dismissal of Plaintiffs' state-court appeal.

(SAC at 20.) And Count 4 contains only the following two allegations:

> HASSAN is therefore entitled to an award of compensatory damages payable by WALZ, GANDHI, BROWN, and/or John Doe 1-10 and/or Jane Doe 1-10, as those individuals are the persons who, acting under color of state law, make the actual decision to target HASSAN for retaliation, knowing that HASSAN was exercising her constitutional due-process rights.
>
> HASSAN is also entitled to an award of compensatory damages payable by WALZ, GANDHI, and BROWN because those Defendants, acting with deliberate indifference after being placed on notice by Plaintiffs' initial

---

[2] Any further amendment to the complaint without significant allegations of personal involvement by Harpstead would be frivolous at this point. If Plaintiffs could make such allegations plausibly, the Court suspects they would have done so already. That is not to say that such information will not come out down the road, and the Court does not intend to foreclose opportunities for future amendment.

> complaint, permitted lower-level DHS/DCYF employees to target HASSAN in retaliation for the exercise of her constitutional due-process rights.

(*Id.* at 23.)

These general allegations are insufficient to show that Walz, Gandhi, and Brown were each personally involved in denying Plaintiffs' payments post-suspension or retaliating against Hassan for filing this case. The three officials are grouped together as participating in the same conduct and there are no details about how they each facilitated, approved, condoned, or turned a blind eye to the alleged constitutional violations. Accordingly, the Court dismisses Counts 2 and 4 to the extent they are brought against Walz, Gandhi, and Brown in their individual capacities.

In contrast, the Court finds that Plaintiffs have sufficiently pleaded Villella's personal involvement in Count 3. The second amended complaint specifically alleges that Villella or Fetrow provided false or misleading information in support of the search warrants. Thus, they allege that Villella was directly responsible for a Fourth Amendment violation. This is sufficient for a § 1983 claim.

## III. Count 2

State Defendants make a variety of other arguments against Count 2 including claim preclusion and lack of a protected property interest. When addressing arguments against Plaintiffs' due process claims previously, the Court held that Plaintiffs' claims were not precluded on the theory that state officials violated their due process rights by refusing "to pay for twenty-four days of CCAP-eligible services that Plaintiffs already provided, after the temporary suspension ended." (Doc. No. 35 at 15.) The Court further

found that Defendants had not adequately addressed whether those payments could qualify as a protected property interest, so the claims could continue on that theory. (*Id.* at 16.) The Court stands by its prior decision that Count 2 is not precluded on this very specific theory concerning payments for the twenty-four days of CCAP-eligible services. Defendants again fail to adequately address whether payments for services already provided can qualify as a protected property interest, so the Court denies the motion to dismiss on that argument.

The last argument State Defendants make on this count is that it is moot as to Plaintiffs' request for declaratory and injunctive relief against Walz, Connolly, and Brown in their official capacities. Specifically, Plaintiffs do not allege that they are attempting to open childcare centers, so this kind of relief is unnecessary. The second amended complaint seeks "an injunction barring Minnesota from using [the one-year rule for submission of bills for CCAP services] to deny payment for CCAP services actually provided in the future" and a declaratory judgment declaring this practice unconstitutional. (SAC at 20.) Plaintiff argues that these requests for relief are not moot because the State's actions are capable of repetition yet evading review. Plaintiffs' response fails to meaningfully engage with State Defendants' argument and explain why those kinds of equitable relief are necessary, or more formally, why Plaintiffs have no adequate remedy at law, despite the fact that they have also requested damages and the Court has not and will not completely dismiss that request. Accordingly, the Court dismisses Plaintiffs' request for declaratory and injunctive relief on Count 2, and thus necessarily dismisses Walz, Gandhi, and Brown in their official capacities. Count 2

remains on the same limited theory as it did before and solely against the Doe Defendants.

As no claims remain against Walz, Connolly, Gandhi, or Brown in any capacity, they are terminated as parties to this case. Similarly, no claims were brought specifically against the State, DHS, or DCYF, so they are terminated as parties to this case.

**IV. Count 3**

Villella argues that Count 3 should be dismissed because she is entitled to qualified immunity and Plaintiffs fail to state a claim. Fetrow made similar arguments against Plaintiffs' Fourth Amendment claim in her motion to dismiss the original complaint. After considering that motion, the Court found Fetrow was not entitled to qualified immunity because "[e]very reasonable official would understand that including false information in a search warrant affidavit would violate clearly established constitutional rights." (Doc. No. 35 at 20.) This ruling applies equally to Villella. And as with Fetrow, Plaintiffs have plausibly alleged a Fourth Amendment violation against Villella because they allege that Villella provided false or misleading information for a search warrant affidavit. *See, e.g.*, *Williams v. City of Alexander*, 772 F.3d 1307, 1313 (8th Cir. 2014) ("The Fourth Amendment requires a truthful factual showing sufficient to constitute probable cause in a sworn affidavit." (citation modified)).

Villella also argues that because she is not the one who signed the affidavit that she could not have violated the Fourth Amendment. As the Supreme Court has said, "police [can] not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity." *Franks v. Delaware*, 438

U.S. 154, 163 n.6 (1978). Villella is not insulated from liability because she did not sign the affidavit. The motion is denied as to Count 3.

### V. Doe Defendants

As the Doe Defendants are unrepresented, the Court does not fully address the remaining claims against them. However, as it did in its prior Order, the Court dismisses Count 3 against the Doe Defendants because Plaintiffs have not alleged any Fourth Amendment violation by anyone other than Fetrow or Villella. Accordingly, the two remaining claims against the Doe Defendants are Counts 2 and 4.

## CONCLUSION

Yet again, the Court has significantly narrowed Plaintiffs' claims and what remains has survived narrowly on the pleading standards. The Court remains troubled by Defendants' actions and hopes that the parties can work to settle this matter. Count 1 is dismissed in its entirety without prejudice. Counts 2 and 4 remain solely as to the Doe Defendants. Count 3 remains solely as to Fetrow and Villella.

## ORDER

Based on the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Defendants Tim Walz, State of Minnesota, John Connolly, Shireen Gandhi, Tikki Brown, the Minnesota Department of Human Services, the Minnesota Department of Children, Youth, and Families, and Twila Villella's motion to dismiss the second amended complaint (Doc. No. [60]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a. The motion is granted as to Counts 1, 2, and 4.

b. The motion is denied as to Count 3.

2. Count 1 is **DISMISSED WITHOUT PREJUDICE**.

3. Tim Walz, State of Minnesota, John Connolly, Shireen Gandhi, Tikki Brown, Minnesota Department of Human Services, and Minnesota Department of Children, Youth, and Families are **TERMINATED** as parties in this case.

Dated: September 1, 2026

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge